Defendant Viktor Khrapunov, along with help from his family, misappropriated over $300 million from Almaty. Afterwards, defendants laundered into the United States tens of millions of dollars precisely in order to make it more difficult and more costly for Almaty to locate and recover the assets. As a result, Almaty spent considerable sums in the United States to locate the assets here and to trace them here. That constitutes a domestic injury, both as a matter of common sense and, perhaps even more importantly, when you take into account the rationales that underlie the presumption against extraterritoriality. Those presumptions are two. Number one, courts apply the presumption in recognition of the common sense notion that Congress normally acts with domestic concerns in mind. When defendants engage in criminal acts in the United States that cause foreign entities, foreign sovereigns, to expend money in the United States or incur liabilities in the United States, providing a cause of action for redress is a matter of domestic concern. Can I interrupt you for a moment? So I'm looking at RICO statute, which talks about the cause of action for a person injured in his business or property, and the city of Almaty didn't allege injury to business. What is the property that belongs to the city of Almaty that was injured? The injury to property here, Your Honor, probably most directly are the out-of-pocket expenditures that the city of Almaty made to investigators. But the property is just general money of city of Almaty. Is that right? That's right, Your Honor. And the injury was spending to trace Kropotkov's proceeds. That's right, Your Honor, in order to eventually recover them. And as we... Can I, before you go on? Sure, of course. I'm not sure that's a separate injury. I'm trying to figure out whether that's a consequential damage of the overseas injury. Could you go right to that point? No, of course, Your Honor, and I'll discuss some case law that's relevant to it as well for you. Okay. There are two different injuries, Your Honor. The first injury is the $300 million. That's not the RICO claim here, is to collect that. If they had taken that money and put it in Switzerland and we hadn't had to spend any money in the United States to trace it down, we wouldn't be making this RICO claim. So the RICO claim... Right, but more importantly, you wouldn't be making it, I don't think you could, if they had taken that money and put it in a bank in the United States and left it there, full stop. I don't think just using the bank account here would have been sufficient, do you agree? Your Honor, I agree that there wouldn't be any substantial injury that would allow us to make it worthwhile to come to court. Because in other words, if we saw the tracing, understood where the money was, the cost would be so minimal that I can't imagine that we'd bring a cause of action to collect them. In other words, there wouldn't be an expenditure. But I think it matters. It's not just about a quantification, it's about whether there's a separate domestic injury. And my understanding is that you're claiming a separate domestic injury because of the money it costs to trace the money laundering. That's correct, Your Honor. Real estate to real estate to bank account to make care of. And I think this is what Judge Acuda is getting at also. Maybe we all have the same question. Because I think on this point, your briefing's really clear. But I'm really trying to figure out whether the money that you spent tracing with investigators and lawyers and whatnot is just, I don't mean just in a minimal sense, but it's qualitatively different, isn't it? There's a qualitative difference between the consequential damage of the initial, I'm going to use the word theft, is that your word, overseas? Sure. As opposed to a separate injury here. And it is a separate injury, Your Honor, because again, without the money laundering into and within the United States, which was of course the crime or the act that we're suing about here, it's the money laundering under 1956. Without that, we wouldn't be claiming that we had a domestic injury. So if they just committed the act that they did in overseas, we wouldn't be saying there's a domestic injury. It is the laundering into the United States and really a shell game within the United States that caused us. What was the first injury, though, when the money was taken from the city? That was the real injury to the city, is that right? Well, that was the primary injury to the city, Your Honor. But it's not the one that we're suing for under RICO. But you need that money back. You want that money back because that was the injury. The fact that it was laundered means that it was more difficult to retrieve it, right? Your Honor, two different points. Number one, we do want that money back. Of course, not all of it's in the United States and certainly not all of it's recoverable under RICO. We want the money back. That's why we ended up spending the money we did in the United States to track down what we could so that in later attachment actions and the like, we could try to obtain that money. But it's the money laundering into the United States and through the United States that caused us to have to expend more money, and it's that money we're complaining about here today. The district court distinguished some of the cases you rely on in Kataram and I think Maze, Viverani. It said in those cases, the money laundering activity actually enabled the individual to continue stealing and taking additional funds. And I think in Maze, the defendant's money laundering concealed the existence of profits so induced further contributions. So there was a direct, the money laundering enabled the direct theft. You're not arguing that that's the case here, correct? No, I think that's a correct reading of those cases, Your Honor, first of all. I think it is too, and can I, right at that place, it's ER 1112. I appreciate the district court distinguishing those cases. I don't know if the district court ever ruled on your theory. That's the problem, Your Honor. That's exactly it, is that it's correct that we're not claiming that the later money laundering circled around and contributed to the theft. We're complaining about the injury caused by the money laundering itself. Do you have a case on math, Giorgi? I do, Your Honor, and I'll explain it in two parts. Number one, try to pronounce it correctly, Giorgi, I believe is the pronunciation we cited in our reply brief, is a third circuit district court decision involving money laundering. There isn't anything controlling, of course. As to more general principles, and I think this is important, not only do the cases that we cited, 17 and 18, and note 3, which concern whether just expenditures of money, out-of-pocket expenditures of money, constitute injury to property, and they say it does, but this court has actually addressed that very question. It's done it twice, Your Honor. First, in a case called Eccentric Ventures, which is 798F3-1201. Eccentric Ventures involved a scheme, an extortion scheme, under which the defendants essentially ruined the reputation of people online, of businesses online, and then charged the money to rectify it. In the particular case, in the particular circumstance I'm discussing here from that case, one of the plaintiffs didn't pay off the extortion, but rather paid a separate expert to go in and fix, or mitigate, the damage done to them online. I think that case is directly on point here, because it was paying that third party to fix the problem caused by the criminal act that constituted the debt. Can you explain? And it was a RICO claim? Was it? Yes, it was a RICO claim, Your Honor. Can you explain what was the necessity for tracing? In other words, was there any legal requirement to trace property? Was there any practical requirement? Because obviously, once they've stolen money and you have proof of stolen money, you can bring an action against them and put a lien on all of their property if you get a judgment in your favor. So it wasn't clear to me what was the legal or practical necessity of tracing. So can you help me understand that? So the term tracing here, Your Honor, to the extent that we're seeking recovery for it under RICO, is not a legal terminology. It's just literally trying to follow the money. Right. In other words, to find it. What was the legal... To execute a judgment? You didn't have a judgment. Correct. We don't have a judgment, Your Honor. So there wasn't any need at this time to determine where their funds were. Yes. But I guess I wasn't following, because normally if somebody's stolen money from you or has defrauded you or whatever, you sue them, you get a judgment, and then there's liens on their property, and it doesn't have to be traceable to the money that was stolen from you. So help me understand that. Your Honor, we've been trying to get the money through different means. Obviously we've got criminal indictments in Kazakhstan that would include restitution, if we could ever have defendants present in Kazakhstan. There's an action in Switzerland, a criminal investigation, that again would obtain restitution, which would bring the money back to us. And we look forward to injuries... Is that ongoing? That's ongoing, Your Honor. And no, there isn't a lawsuit that we've actually met with them in a particular jurisdiction yet and obtained a judgment. But in order to safeguard our ability eventually to attach the assets, and this isn't just in the United States, this is worldwide, we have to know where they're putting the assets to be able to get them. But it doesn't have to be traceable to the money that was stolen from you, correct? I mean, have you got a judgment? The tracing is not necessary in order to attach, Your Honor. That's unfortunate, right? Because tracing is a term of art in money laundering, and that's why it gets to be... That's right, and... Not using it in that sense? No. You're just trying to find out where they have money. It doesn't have to be related to the money that was stolen. Well, it almost all is as a factual matter, Your Honor, in this case, because you've got a civil servant... But that's irrelevant, right? Well, I'm just explaining why we're trying to find the assets. Okay. So then at one point, if you get a judgment somewhere, you'll be able to execute it? That's right, Your Honor. So you've got to not lose track of it? That's exactly it, Your Honor. I did not mean to, but I did. I interrupt Judge Ikuda's... Well, your answer to Judge Ikuda's question. So going back to these cases on ER 1112, where I said, I don't think that the judge really ruled on your theory. I think you agree, but I want to be sure, with Judge Ikuda, that the cases cited there that the district court distinguished are distinguishable. They seem to me to be distinguishable. I think they are distinguishable, Your Honor. Mays, in particular, certainly is one where they talked about that the hiding, what was going on, enabled them to continue to fool people and thus enabled to continue to steal their money. Mays had a couple of comments, though, just in its rationale, as it was thinking through the question of money laundering, that I think are helpful, because what the court found is that money laundering, by definition, follows the commission of an unlawful act. In this case, specified unlawful acts, but always an unlawful act. And he said there's no reason to believe, based on the text of the statute, that Congress intended money laundering peculiarly to limit the damages that are available from money laundering to damages caused by that kind of a circular damage theory that they had in Mays. What you just said. I will try it again, Your Honor. I'm sorry. I'm sorry. And while you're answering that, could you tell me how that makes it a domestic injury? Yes. Because I got the feeling that that's what you were angling toward, right? I better be, Your Honor. Just take another run at it. Let me take another run at it, Your Honor. If you read Mays, Mays talks about the defendant's argument in that case that, of course, money because the injuries precede the money laundering, or at least the underlying injury precedes the money laundering. And the court said, well, we understand that that's usually the case, but Congress didn't write anything that limits the ability to get damages to the extent that money laundering causes damages. Damages. But let me ask you, since we're looking at property. So we said in DS that property has to, a property interest has to be understood under state law. So is there any, I don't know if California or some other state would apply. What's the interest in property at issue here? How would it, how would you characterize it? Your Honor, after I answer this, I'd probably like to, well, I've got to answer another question too that you asked, Your Honor. But if I have time left, at any rate, the interest in property, the direct interest in property is the money that we spent and in order to investigators in order to find our assets here. And in addition to voluntarily, so does, is there anything in state law that that would say that the voluntary expenditure of funds to assist you in your legal action is an interest in property that's separately cognizable? So, Your Honor, voluntary and compelled, and both parties have been throwing these concepts around, are not really the right concept here. It's really proximate causation. And the question is whether it was the direct and foreseeable result of the unlawful money laundering. Well, why is that the case? I mean, like in Harmony, which you, which you cite, the issue there was if they didn't respond, they had a legal need to respond because otherwise they would be damaged. So that was true in Harmony, Your Honor. It wasn't true in Eccentric, and it wasn't true in Just Film, which is another case of  Well, I thought in Eccentric they would be hurt in their business by the defamatory statements and they had to defend themselves. Well, sure. And in this case, just as if somebody takes my bike and walks across the street with it and goes up an alley with it, I'm naturally going to follow to see where they're taking it so that I can someday get it back. So you're saying the failure to spend would have injured you because it was possible that after you got a judgment, it would be harder to find the money? Or Well, we might not be able to find it at all, Your Honor. In other words Is there a possibility about mitigating? Is there a possibility you might not be able to recover if you didn't mitigate? If we took no steps to follow it and to try to locate it, we might not As a factual matter As a legal matter I guess a factual matter, but as a legal matter As a legal matter, the honest truth is I don't know, Your Honor. I don't know how that would work. DIAZ seems to me to cut in a couple of different ways. It says there has to be damage to business or property. It says there has to be a concrete financial loss. It says that only proximate cause is required. And then it's holding, which is really what was going on in DIAZ, is distinction between a personal property, right, and a business interest. So it said we merely hold that the appellant cannot recover under RICO for these pecuniary losses that are not properly understood as part of a personal injury claim. So just when I think DIAZ is so helpful in many ways in trying to corral, then I realize they're really distinguishing between Honestly, Your Honor, that's the holding of DIAZ. The cases that I was citing earlier, Eccentric, actually cites DIAZ, as does Just Film, which is the 847 F3rd 1108 case. I know I've run out of time. Are those pre or post Nabisco? Are they pre or post Nabisco? Those cases are not domestic injury cases, Your Honor. Those cases address whether you have an injury to property at all. And so I was answering that question. As far as domestic, all I'd really like to get out, Your Honor, is that I think that this Court should look at the question of where the injury occurred, not just mechanically. I think that the defendants Defendant was a continuation of the injury when they came over. When someone acts in the United States to whether extort you, defraud you, move your money around in such a way that you're abroad and you are, as a foreseeable result, you spend money in the United States, you incur liability in the United States, that's an injury you suffer in the U.S. And none of the reasons that Nabisco was looking at for how to decide this question are offended by that. Nabisco was very concerned with comedy. Nabisco, all of those cases are, and they're concerned primarily, as that case pointed out, with not extending U.S. law to actions or conduct that occurs abroad. That's not at issue here. In this case, comedy pushes the other way because a foreign sovereign or a foreign person reasonably expects when they're victimized in the United States, are forced to expend money or incur liabilities in the United States, the United States will provide them a forum for redress. You're well over time. We took you there. So we'll give you a minute for rebuttal. I appreciate that, Your Honor. Thank you. Good morning, Judges and Judge Ikuda. Thank you very much. My name is Martha Bursch, and I represent the Krapunov family and the related entities. Your Honors, I want to address a couple of issues that have been raised during the appellant's argument. First of all, the appellant appears to concede in its argument that the only injury it is alleging is essentially that it has been impeded in some way from tracing or locating assets that it alleges are somehow derived from the real property stolen, allegedly, in Kazakhstan. Are you including in that the money that it expended in trying to unravel the alleged money laundering here in the United States? There's two issues there, Your Honor. First of all, if you look at the complaint, the complaint on the whole, in multiple paragraphs, essentially alleges an intangible harm. That is, as they stated in their opening argument, an impedance of their ability to locate the property. On appeal, they've shifted their argument a bit, and they focus on just two parts of the complaint, where they now allege that they actually spent substantial sums tracing or trying to locate the money. But the complaint is absolutely devoid of any allegation that that money spent was ever in the United States. There is no allegation that Almaty ever had any business or property, including the money that it alleges that it spent to trace these assets, in the United States. Even if we assume that the money they spent, and it could have been for investigators in Switzerland, in Kazakhstan, we don't know. It's not alleged anywhere in the complaint. Even if they were able to allege or had alleged that the money that they spent was somehow dollars in the United States, still, under RJR, you would look at where is that injury actually felt. And that injury is actually felt in the Kazakh fisk. That's where the injury has occurred. And there's several places. Why? If this injury is tracing the investigator fees and attorney's fees, why is it felt only there? Because it's money expended by Almaty and Kazakhstan, and that, when you look at where someone suffers, if they part with money, the question is, where do they suffer that injury? You would have a strict residency test. No. I would look at where was the money, where was the locus of the money that was spent? Because that's where you're deprived of the money, and that's in Kazakhstan. That's what I'm calling the theft. There's the initial theft, but he's making, very clearly making a different argument about money expended here to trace real estate from Beverly Hills home to Beverly Hills home. Are you saying if they wire funds to a private detective agency in California because they're wiring funds from their bank in Kazakhstan, they're feeling the injury in Kazakhstan? I am saying that. Do you have a case supporting that? I am saying that. And that is my understanding. That's what I mean by a residency test. There are two cases I would refer to for that, Your Honor. There would be Korea Trade Insurance Corp. v. Active On1, Inc., and that's 2018 West Law 1281800. Sorry. I'm going to get that down if I could. 1281800. Thank you. A district court case from the Southern District of California. Essentially it said that because the complaint did not allege the location of the funds expended and it was not reasonable to infer that the funds were located in the United States where the plaintiff was a foreign corporation, the allegation of expenditures of fund was not a sufficient domestic injury under RJR. The other one I would cite would be the government of Bermuda v. Leahy Clinic, which is 2018 The complaint does not allege misappropriation of domestic funds or that the funds were paid from U.S.-based bank accounts. My point in this is essentially that for all the plaintiff's arguments on appeal and in their appellate briefs, if you look at the complaint, it's utterly devoid of even an allegation of domestic injury. Those words don't appear in the complaint. And the allegations in the complaint of the harm that Almaty allegedly suffered in the United States are, as I said, predominantly some sort of impedance on its right to locate these assets, some unspecified right. Counsel, paragraph 84 says defendants harmed Almaty by concealing those funds from Almaty and thereby causing Almaty to have to devote substantial monies and time to use extraordinary means in the United States to trace and recover their funds in the United States. Yes. That's what I understand. That's what I have understood their allegation to be. Can you tell me why that's inadequate? So because, first of all, harming them in terms of their ability to trace is an intangible right. And second of all, it might be sufficient in some other case, but it's not sufficient based on the allegations in the complaint here. Because, as I said, there's no allegation that Almaty had any business or property in the United States, including the money that it says that it spent. Because they have to allege an injury to business or property in the United States, if they're going to rely on those downstream effects, and there's numerous cases, including Baskunin, that say you cannot rely on those downstream effects where your original injury is in a Because those allegations in the complaint don't allege that it was any business or property in the United States, as RJR Nabisco requires. They refer to tracing and recovering their funds in the United States, and you're saying that refers to the original theft of funds. Is that what you're saying? It is a derivative injury from the original theft of funds, number one. So what about devoting substantial monies and time and using extraordinary means in the United States? Is that enough to say that they're spending money located in the United States, or they're spending their money in the United States? I think it's not, Your Honor, because they don't actually identify any specific business or property in the United States that was injured. Okay, so paragraph 110, defendants harmed Almaty by concealing those funds from Almaty, and thereby causing Almaty to have to devote substantial monies and time and to use extraordinary means in the United States to trace and recover their stolen funds hidden in the United States. I don't want to use all your time on this, but I think he's made that allegation. I'm real interested in knowing why you think that's not sufficient. I think it's not sufficient because it's a derivative injury, as the cases have said, including Baskunian, and if the court were to reverse the district court here and hold that that was sufficient, you would be creating a circuit split with Baskunian. You would be essentially eviscerating the domestic injury requirement of RJR because it would mean that all anyone would have to do to allege a RICO domestic injury, no matter where the original conduct occurred, would be to come to the United States, spend some money years after the fact, and then allege that that spending of the money is sufficient to allege a domestic injury under RJR. So if in paragraph 110 they had said, we have substantial funds in a bank account in New York, which we spent in order to trace our stolen money here, would that have been enough? I don't think so, because under the case law, that's a derivative injury, and under RJR Which is a derivative injury? The expenditure of funds? The subsequent spending of funds is derived from the original injury. The original injury is the alleged misappropriation of property that occurred in Kazakhstan. I think obviously it would be different, and again, I don't know that the court has to go on these sort of what-ifs, because if you look at the complaint here, and if you look at the facts alleged here, I think it's not sufficient. But if the defendants had stolen the money out of a bank account, as Paskunyan points out, if they'd actually stolen that money out of that bank account, that would be sufficient. But I think merely because then... That's funds taken out of misusing a power of attorney, right, to, you're using the word bank account. Right. In that instance, the property that the plaintiff is deprived of was located in the United States at the time of the misappropriation. So that's clearly sufficient, but why is this insufficient? This is really qualitatively different. Because the spending of money, as I said, after the fact, after the original theft in Kazakhstan, is a derivative injury, as all the courts have noted. It's not... And under RICO, you have to look at where does the original injury to the plaintiff occur? And simply... Well, we've said in Diaz that you have to look at separate injuries, you have to look at them separately. So I will grant everything you have to say about the original theft, that's my word, overseas. But it would be much more helpful for me if you could focus on the separate allegation he's making here about this domestic harm, and why that is not... Why that doesn't pass muster. Well, I think I have to go back to RJR and the cases, and RICO itself, which says that you have to allege an injury to business or property in the United States. Their voluntary expenditure of funds here, as they actually admit in their reply brief, was not caused by the defendant's conduct. So there's an additional... Actually, you're right about that. Let's go to voluntariness, if I could, because I think Judge Acuda had some really interesting questions about that. And so it seems that they have a couple of choices. One is they're proceeding overseas, and I think they have to proceed overseas to try to get a judgment. If they get the judgment, are you really contending that they don't have an obligation to try to keep track of this money before it's just vanished? Not at all. Not at all, Your Honor. And on the overseas, I do want to point out one thing. The Swiss proceeding has been closed without any criminal charges in Switzerland. But no, I think that's the way they should have gone, is if they... What is the way they should have gone? If they have a foreign judgment, they want to come here and enforce a foreign judgment. That's their remedy. Yes, but they don't have to... Why is it the case that they have to wait to take any steps in the meantime? The money will be... That's their theory. The money will be the most. They won't be able to find it. Is that really your contention? They can't take any steps? No. No, not at all. They don't have to wait. They can take those steps. They can try to locate the assets. They're absolutely free to do that. That's a voluntary act on their part. The point is it's not a domestic injury to property caused by the defendant's RICO conduct. So you think they can't sue yet? They can't sue under RICO. They may have other remedies, but they cannot sue under RICO because that voluntary expenditure of funds in the United States, which they concede in their reply brief, was not caused by the underlying RICO. They would have done it anyway, and so they can't sue under RICO for that. So aside this case Tatung, I think it's a district court case, there was a arbitration award and then the defendants siphoned money out of the entity that would have paid off the award, and we deem that was an injury to their property. Why isn't that analogous here? In that case, Your Honor, I think it's distinguishable because there it turned on the fact that the plaintiff was a foreign corporation that was actually doing business in the United States. It had pre-existing property and business in the United States, and then through an American subsidiary, they got an American arbitral award in the United States, the collection of which the defendants frustrated. So the defendants' acts in frustrating the collection of that award were part of the underlying RICO predicate. That is not true here. The plaintiff's spending of money allegedly here is not alleged to be part of the defendants' original conduct in Kazakhstan almost 23 years ago. Well, in Tatung, though, the court also reasoned that the defendants specifically targeted their conduct at California with the aim of thwarting Tatung's right in California. So isn't that what they did here? If you believe what the opposing counselor said, they purchased property here that had to be pursued here, and I don't know that I agree that it was totally voluntary. They had an obligation to recover these funds that were stolen from the government. Well, let me just... I know that there were two questions. Yeah, I understand. I don't know that they had an obligation. They might have had an obligation. As I said, they're perfectly free to do that. All I'm saying is that that expenditure of funds is not a domestic injury under RICO, under Baskunin, under the cases that hold that those sorts of injuries are derivative of the original fraud or conduct in the foreign country. And the allegations, again, in this complaint are not even remotely similar to the sort of fraud that happened in Tatung, where the fraudulent conduct was all occurring in the United States, and the frustration of the defendant's ability to collect its money also was part of that original predicate of RICO. And the problem, a large problem with this case, is that the whole... are a series of bootstraps that really lack any underlying factual support in the complaint, including the allegation that the money spent here or the property here is somehow traceable to or belongs to Almaty. The complaint is really devoid of any allegation that it is other than a claim on information. You're saying that Almaty's property can be stolen, brought here, and then to pursue the stolen property is not Almaty's? No. What I'm saying is that the allegations in the complaint that the property here is actually Almaty's are on their face insufficient. There's no allegation. They haven't traced it. We don't know. We don't... There's no connection between the property here and the original sale of land in Kazakhstan in violation of some Kazakh laws. There's no connection here other than an allegation in the complaint on information and belief that the property is traceable, but there's no facts in the complaint that would support that allegation. All right. Thanks. Thank you for your argument. Thank you. And we'll give you a minute for rebuttal. Thank you. I'm going to move very quickly, I guess. Number one, we don't have to plead with particularity how the tracing worked. This is just physical fact. Number two, I'd point to Akashev as a good case to look at in terms of where an injury is felt. That's one where there was an Internet scam, and people overseas sent money from overseas into the United States for cars. Number three, no circuit split with Baskunin. There was no allegation in Baskunin that the money laundering caused an independent injury. Number four, Diaz says that secondary effects can still be injury in this circuit, and it doesn't so this notion of downstream doesn't apply and shouldn't logically. Number four, Tatung, there wasn't a U.S. subsidiary that was suing in that case. The court noted that the company had a U.S. hub, but the injury wasn't traced in any way to that hub, and I think if the court reads the opinion, the hub was irrelevant to the conclusion of the court in that case. What about the garlic importers case? There was a consequential damage there that seemed actionable, except that was it assumed actionable and not litigated? That's correct, Your Honor. Okay, thank you. Thank you. Okay, we thank both sides for the argument, and the case of City of Almaty v. Victor Krapunov is submitted, and we're adjourned for this session. All rise. This court for this session stands adjourned.
judges: Ikuta, Christen, Marbley